This case was previously before our Court and the appeal, as taken, was dismissed for lack of a valid order of appeal. See12 So.2d 471. The case is fully stated in the reported opinion and it is unnecessary to state the issues here again. Suffice it to say that the suit is one for damages by the owner of a truck which ran into a bridge at night, on the side of a road on which another truck was parked with glaring headlights burning, and without any flares being displayed on the highway as a warning that it was so parked. As pointed out in the previous opinion, the defense is a denial of the negligence charged against the driver of the parked truck, and in the alternative, a plea of contributory negligence charging the driver of the damaged truck with negligence in his failure to maintain a proper lookout, to keep his truck under proper control, and also in driving too fast. *Page 82 
The appeal had been taken by the defendant against whom judgment had been rendered and after its dismissal by our court, the defendant took and perfected this devolutive appeal and the case has been resubmitted.
The testimony reveals that on the night of October 7, 1939, a truck belonging to the defendant, and being driven by one LaPorte, was engaged in delivering groceries on the highway between Clinton and Greensburg. At about eight o'clock that night it had to stop to make a delivery at the store of Sam Calvit which is situated in the open country opposite Darlington Post Office in the parish of St. Helena. The store is on the south side of the highway and in order to make the stop, as the truck was traveling westward, the driver stopped on his left hand side of the highway. The headlights of the truck were burning brightly. This is not disputed and indeed it is the point on which plaintiff relies probably more than any other to show that he became confused as, he says, he did not know if the truck was stopped or moving at the time. The truck was parked immediately next to a wooden bridge in front of the Calvit store and although there is some conflict in the testimony as to the exact distance the right hand wheels projected on the hard surface part of the highway, the preponderance of the testimony shows that it projected some two or three feet, and not more. We say that for this reason: From Mr. Calvit's testimony, according to certain measurements which were made by counsel for the defendant, when he was present, the distance from the north edge of the bridge to the hard surface portion of the highway is 5 to 6 feet. The truck was parked from one to two feet off the north edge of the bridge, leaving therefore at least four feet of the truck parked on the shoulder of the highway, and the balance which we would say could not be more than two feet parked on the hard surface part of the road. This seems to be borne out also by the various photographs introduced in evidence and which, the witnesses who identified them, stated, represented the position of the truck as it was parked that night.
The testimony shows that the highway runs east and west and that for a distance of at least one quarter of a mile west of Calvit's Store, it is perfectly straight. That is the direction from which the plaintiff's truck was coming as it was traveling east. There is some testimony about an elevation in the road but we take it that it is slight and the preponderance of the testimony again seems to be clear that for the whole distance of about a quarter of a mile there was nothing to obstruct the vision of the driver of the plaintiff truck and therefore he should have been able to clearly see the lights burning on the parked truck.
The driver of this truck testified that he was going about thirty-five miles an hour and that he saw the lights of the other truck as it came down the road, at which time, he says, it was moving. He says that he reduced his speed, dimmed his lights twice, and applied his brakes. The lights on the other truck however remained bright. He then says that he pulled his truck to the right to keep from going into a wreck and that he ran into the bridge when he was about two feet from the other truck which turned out to be parked there.
Mrs. W.S. Hinson, wife of the plaintiff, was in the truck with the driver at the time and she also states that they were going about thirty-five miles an hour; that when they came around the curve on the highway they noticed the lights of the truck in the opposite direction and that it was moving at that time. She states that the driver of her truck kept to his right and stayed on that side of the road until they were right on the other truck. Both she and the driver state that there were no flares set out on the highway and it is admitted that the driver of defendant's truck had not displayed any.
The driver of the defendant truck did not testify in the case but from the testimony of Mr. Calvit and of other witnesses who were at the store at the time, there can be but little doubt that the truck had been parked at least for several minutes. Mrs. Hinson says that when she spoke to him, the driver told her that he had come in the store for a few minutes and Mr. Calvit's testimony indicates that he had been there for as long as ten minutes. This testimony of course refutes the contention of both Mrs. Hinson and the driver of the plaintiff truck that the latter could have become confused by the lights of the defendant truck, and their uncertainty, whilst it was moving, as to what side of the road it was going to maintain. That contention also seems to be somewhat in conflict with their charge of negligence against the driver of the defendant truck *Page 83 
for his failure to have displayed flares on the highway. If his truck was in motion at the time obviously he could not have displayed flares as they claim he should.
In discussing the question of the negligence of the driver of defendant's truck in failing to have displayed flares, we note that counsel for defendant makes the point that his failure in that respect cannot stand as a charge of negligence for the reason that at the time this accident happened, what is known as the "flare law", Act 164 of 1936, had been repealed by Act 286 of 1938, this latter act purporting to cover the whole subject matter regulating traffic on the highways of this State.
Act 286 of 1938 was enacted as a general law to replace the previous general regulatory act, Act 21 of 1932, which it specifically repeals. It also repeals all laws that are in conflict with its provisions but we do not think that the flare law of 1936 is in conflict. That part of the general law which counsel contends supersedes the flare law is the one which prescribes what lights parked vehicles must display at night. As we view it, that provision has reference to motor vehicles in general whereas the flare law applies to certain particular classes of such vehicles. It definitely prescribes that the classes included in its provisions shall at all times be equipped with at least three portable flares, a requirement which certainly cannot be said to be in conflict with any part of the general act of 1938 which contains no such provision for the reason, we presume, that it deals with all classes and types of motor vehicles and it was not intended to require them all to carry flares. Our opinion therefore is that the flare law was in effect at the time of this accident and as the truck of the defendant was of a class covered by its provisions, it was incumbent on the driver, in parking it on the highway at night, to display flares. We may assume his negligence in this respect and still we believe that plaintiff is barred from recovery because of the contributory negligence of the driver of his own truck as will be pointed out in discussing the next charge of negligence on the part of the defendant's truck driver, that is his negligence, vel non, in having parked his truck on the wrong side of the highway.
In Am.Jur. Vol. 5 p. 682, Sec. 335, it is stated that "it is generally recognized as negligence to park on the wrong side of a much traveled highway" but that same authority adds that the mere fact of so stopping an automobile "does not, under all conditions, constitute negligence." As an instance it is stated that "parking on the left side with the headlights burning for the purpose of making a delivery, * * * even if there had been an opportunity to turn off the road for that purpose, is not negligence." Also under that authority, it is held that in order to base liability upon parking on the wrong side of the road, the fundamental rule of the law of negligence, in so far as it relates to the proximate cause of the injury that follows, applies.
But we might well say for the sake of argument that the driver of the defendant truck was guilty of negligence in this respect, his negligence at the most would be passive, and can it then be said that the driver of the other truck was not himself guilty of active negligence which contributed to the accident? He and Mrs. Hinson both admit that they were traveling at the rate of 35 miles per hour when they first saw the lights on the other truck at a distance a quarter of a mile away. They both say that he reduced the speed of his truck but neither says to how much. They both say also that the other truck was moving. Had that been so plaintiff's driver would have had the right to assume, under the law, that it was going to go to its right hand side of the road in meeting him. But the proof is positive that it could not have been moving at that time. It had been parked for at least several minutes and probably as long as ten minutes. During all the time therefore that the plaintiff truck driver was traveling that quarter of a mile, even though he may at first have been confused, he still had ample time, in our opinion, to apprehend the real situation and to realize that the other truck was not moving and that it was parked in front of him on his side of the road. It looks to us therefore that either he was going too fast under the circumstances, and kept going on too fast, or else he was not keeping a proper look-out ahead of him. Had the parked truck been occupying his entire lane of travel on the south side of the road it might be that he would have been confused about its position, but as we have already indicated, the proof is that it did not occupy more than two or three feet of the lane of travel on that side of the highway and by the testimony of plaintiff's own witnesses, he had ample room in which to pass on the left hand side. *Page 84 
These are the conclusions which we have reached with regard to the plea of contributory negligence, and we think that they are supported by some of the decisions of our Courts of Appeal. In the case of Shell v. Nelson, La.App., 161 So. 639, as far as the parties were concerned, we had a reverse of the situation presented here, as it was the owner of the parked car at a gasoline filling station who was suing the owner of the truck that ran into him for damages. The parked car had its right hand wheels at about the edge of the paving, which on account of a curve at that point was more than the usual width. The front of the station was illuminated. The offending truck coming from the opposite direction crashed head-on into the front of the parked car. The defense to the plaintiff's suit was that the lights on the parked car were off and only flashed when the truck was within 15 to 40 feet from it. The trial judge found as a fact that the car lights were on all of the time. But even then, the Court of Appeal held that if they were not, the station was well lighted up and the car could be seen for a distance of from 150 to 200 yards. The substance of the decision is that the driver of the truck was negligent in not having seen the parked automobile and he was held liable for the damages arising from his having run into it. As a further defense it seemed that the defendant contended that the parked car was on the wrong side of the highway but again the court stated that if it was, the proof showed that it was not more than one or two feet on the paving, in plain view, and that the driver of the truck had ample room to pass on the side of it had he been maintaining a proper lookout and had proper control of his car.
The case of Painter v. Bewley Furniture Co., La.App., 195 So. 70, also has some bearing on the question at issue. There, a pedestrian who was attempting to cross a street in Shreveport, and who was injured when he ran into a parked truck of the defendant while he was dodging an automobile which was suddenly trying to avoid running into it, had his suit dismissed on an exception, under the allegations of his petition, that the parking of the vehicle involved was not the proximate cause of the accident and the resulting injury which he sustained. The court stated that perhaps the defendant's employee was negligent in parking the truck as he did, but the allegations of fact in the petition did not disclose that such negligence had any causal connection with the plaintiff's claimed accident and injury. It is true that the court stated that under the facts as disclosed in the petition the plaintiff had already passed such truck, when the moving vehicle which caused him to jump backwards appeared on the scene, but we observe that it referred to the merely "passive role" which was played by the parked truck, which under no condition could bring about a collision with the plaintiff, in broad daylight, unless there intervened a new and active cause for such condition. That cause was held to be the act of plaintiff himself in running against the standing vehicle. Under the same reasoning, can it not be said in the present case that the role of the parked truck was also merely "passive" and that the intervening active cause for the collision of the plaintiff truck with the bridge, was the act of the driver of that truck in not seeing the parked truck with its bright lights burning, and bringing his truck under control before running into the bridge?
The case of Arbo v. Schulze, La.App., 173 So. 560, is also one having to do with the collision of a truck parked on the wrong or left side of the road. This truck did not have its lights on and was parked at an angle, its rear extending more than one half the distance across the street. The case was also one disposed of on an exception of no cause of action, on the general rule that the driver of an automobile at night is negligent if unable to stop his car within the range of his vision. It appears that in a supplemental petition which plaintiff had been permitted to file, he had alleged that his lights did not illuminate the road before him until he had completed the turn from the street he was on into the street where the truck was parked, only 50 feet away, thus creating an emergency which prevented him from seeing the truck in time to avoid colliding with it. The court in commenting on this point said that that was doubtless true but that fact should have been considered and proper precaution exercised during the short period of semi-darkness existing, at the moment. If the truck was only partially revealed, or but dimly perceived, there was more reason for caution on the plaintiff's part and if he was uncertain as to what the object in his path appeared to be, he should have slowed down, or if necessary, stopped in order to ascertain its extent and location before attempting to pass. This decision goes to show how far *Page 85 
other courts have gone in holding the driver of a truck such as the one of plaintiff's truck in this case, guilty of contributory negligence.
The trial judge did not assign written reasons and we do not know on what ground he based his decision but we have concluded that he erred in not sustaining the plea of contributory negligence and therefore it should be reversed.
For the reasons stated it is now ordered that the judgment appealed from be and it is hereby reversed, annulled and set aside and it is further ordered that there be judgment herein in favor of the defendant and against the plaintiff rejecting the latter's demand and dismissing his suit at his cost.